## School Lunch Program

24

KANE, Attorney General, ROVELLI, Deputy Attorney General, and YAKOWICZ, Solicitor General, December 30, 1977 — You have requested our opinion as to whether a Pennsylvania school district participating in the national school lunch program may lawfully employ a food service management company in its feeding operations. It is our opinion, and you are so advised, that, subject to conditions and limitations set forth in this opinion, a Pennsylvania school district participating in the national school lunch program may lawfully employ a food service management company in its feeding operations.

## I. AUTHORITY TO CONTRACT

The national school lunch and related child nutrition programs are administered, pursuant to the National School Lunch Act of June 4, 1946, 60 Stat. 230, as amended, 42 U.S.C.A. §1751 et seq., and the Child Nutrition Act of October 11, 1966, 80 Stat. 885, as amended, 42 U.S.C.A. §1771 et seq., etc. by the United States Department of Agriculture (USDA), and by the Pennsylvania Department of Education acting as the State educational agency within the meaning and for the purposes of the National School Lunch and Child Nutrition Acts: 42 U.S.C.A. §§1760(d)(2) and 1784(b).

Congress adopted the National School Lunch Act in 1946 to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities by assisting the States in the establishment of school lunch programs: 42 U.S.C.A. §1751. The act requires the school lunch programs receiving assistance under the act be operated on a nonprofit basis: 42 U.S.C.A. §1758(c). The act does not, however, define "nonprofit," and clearly, a food service management company contracting with a school district to manage a school lunch program in one or more of the district's schools is motivated in doing so by the prospect of making a profit. We are, therefore, first confronted with the issue of whether the nonprofit requirement of the School Lunch Act prohibits school districts participating in the national school lunch program from employing management companies.

While voluminous legislative history accompanies the School Lunch Act, the Child Nutrition Act, and the many amendments to both acts, that history sheds little or no light on the nonprofit is-

sue. Rather, the principal commentary on this issue is a 1956 opinion of the General Counsel of the USDA, Op. Gen. Coun. No. 27, May 2, 1956, which concludes that the School Lunch Act does not prohibit the employment of a food service management company where: (1) the school food authority[1] retains control over the quality, extent, and general nature of the program and the prices charged to the children; (2) the school food authority is responsible for all costs of, and entitled to all receipts from the program, the management company performing its contractual functions, e.g., purchasing food, employing personnel, etc., on a reimbursable basis; (3) the management company receives only a reasonable fixed fee for its services and the benefit of any cost savings accrues to the program and not the company; (4) all income accruing to the program remains in the program and is used solely to cover the cost of operating and improving the program or reducing the cost of lunches to the children; and (5) the school food authority determines that under contractor operation, as compared with self-operation, the total program cost will decrease without increased meal prices and without sacrifice in the quality of service.

The essential thrust of the General Counsel's opinion is that a food service management company receiving only a reasonable fixed fee for its services is not able to operate the school lunch program for its own account. The nonprofit re-

1. The term "school food authority" does not appear in the General Counsel's opinion. It is, however, the term currently in use in USDA regulations and, as defined in USDA regulations, it is generally synonymous with "school district." See 7 C. F. R. §210.2(p).

quirement of the School Lunch Act is not violated, in the General Counsel's view, because the fixed fee "represents an expenditure similar to that made under a contract for the purchase of goods. In both cases, the vendor may make a profit, but the expenditure represents only a cost of operating for the vendee."

Despite the 1956 General Counsel's Opinion, USDA regulations prior to 1969 prohibited participating school districts from employing food service management companies. See, e.g.: 28 Fed. Reg. 1249, §210.8(c) (1963). In 1969, the USDA, faced with expanding the school lunch program to inner city schools lacking space and equipment for food preparation, amended its regulations to permit the employment of food service management companies on a pilot experimental basis where the effect would be to "extend food service to needy children not previously benefiting from the program:" 34 Fed. Reg. 807, §210.8(c)(3).

In 1970, the USDA again amended its regulations, this time to completely eliminate the prohibition against employment of food service management companies: 35 Fed. Reg. 3900, §210.8(d). The USDA regulation currently in force, 7 C.F.R. §210.8(d), provides as follows:

"Any School Food Authority may employ a food service management company, nonprofit agency or nonprofit organization in the conduct of its feeding operation, in one or more of its schools. A School Food Authority that employs a food service management company shall remain responsible for seeing that the feeding operation is in conformance with its agreement with the State Agency or the FNS Regional Office. The contract between the School Food Authority and the food service

management company shall expressly provide that:

"(1) The food service management company shall maintain such records (supported by invoices, receipts, or other evidence) as the School Food Authority will need to meet its responsibilities pertaining to the financial management system and any other requirements prescribed by the State agency;

"(2) Any federally donated commodities received by the School Food Authority and made available to the food service management company shall enure only to the benefit of the school's feeding operations and be utilized therein; and

"(3) The books and records of the food service management company pertaining to the school feeding operation shall be available, for a period of 3 years from the date of submission of a final Financial Status Report, for inspection and audit by representatives of the State agency, of the Department, and of the General Accounting Office at any reasonable time and place, except that, if audit findings have not been resolved, the records shall be retained beyond the three-year period as long as required for the resolution of the issues raised by the audit."

The Secretary of Agriculture is authorized to "prescribe such regulations as he may deem necessary to carry out [the National School Lunch Act]." 42 U.S.C.A. §1779. Though not dispositive in a judicial determination of the meaning of the School Lunch Act, USDA regulations do carry weight: Davis v. Robinson, 346 F. Supp. 847, 856 (D. R. I., 1972), and are entitled to deference unless it can clearly be demonstrated that they violate the act.

In our opinion, it cannot be clearly demonstrated that section 210.8(d) of the USDA school lunch regulations violates the National School Lunch Act. In 1968, Congress amended the School Lunch Act to add the special food service program providing food on a year-round basis to children in service institutions such as day care and recreation centers. In 1975, Congress amended the act to separate the special food service program into the summer food service program (42 U.S.C.A. §1761) and the child care food program: 42 U.S.C.A. §1766. Both programs, like the school lunch program, must be operated on a nonprofit basis: 42 U.S.C.A. §§1761(a)(1) and 1766(a)(1). With respect to the summer program, however, the act specifically provides that "[n]othing in this section [§1761] shall be construed as precluding a service institution from contracting on a competitive basis for the furnishing of meals or administration of the program, or both." 42 U.S.C.A. §1761(1).

While the absence of a similar provision in the sections relating to the school lunch program might be construed as an indication that Congress intends to prohibit contracting in the school lunch program, the more logical construction, in our view, is that the presence in section 1761 of both the nonprofit requirement and the provision permitting contracting is an indication that Congress does not view the nonprofit requirement and contracting with management companies as inconsistent or mutually exclusive. This interpretation is further supported by the fact that subsection (1) was added to section 1761 in 1975, five years after the USDA amended its school lunch regulations to lift the prohibition against contracting with management companies. If Congress had intended to

prohibit the employment of management companies in the school lunch program, it could have specifically amended the school lunch sections of the act in the same fashion that it amended section 1761 to specifically permit contracting in the summer program.

We conclude that the nonprofit requirement of the National School Lunch Act does not operate as a blanket prohibition against the employment of food service management companies and that, therefore, section 210.8(d) of the USDA school lunch regulations is Federal authority for school districts participating in the national school lunch program to employ food service management companies in their feeding operations.

Section 210.8(d) is not, however, sufficient in itself to authorize participating Pennsylvania school districts to contract with food service management companies. A Pennsylvania school district is a creation of the General Assembly having only the powers conferred upon it by State statute. For a Pennsylvania school district to have the power to contract with a food service management company, there must be either State statutory authority or a State statute implementing the Federal grant of authority.

Two sections of the Pennsylvania Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §1-101 et seq., relate to the operation of food services in Pennsylvania schools. Section 504, 24 P.S. §5-504, confers upon boards of school directors the power to operate school cafeterias. Section 1337, 24 P.S. §13-1337, authorizes the operation in Pennsylvania schools of Federally-assisted school food programs.

Section 504 provides as follows:

"The board of school directors in any school district shall have power to establish, equip, maintain, and operate cafeterias in any of the schools under its jurisdiction, whenever in its judgment it is deemed advisable to do so, and shall have power to appoint such *directors, supervisors, or other employes* as are necessary, and set and pay their salaries.

"The cost of housing, equipping and operating such cafeterias may be charged against the funds of the school district.

"The food served shall be sold to the pupils, teachers, and *school employes of the cafeterias* at such price as will not materially exceed the cost of operation.

"It shall be legal for boards of school directors to authorize the proper *school employe* to purchase perishable food supplies for cafeterias without advertising bids.

"There shall be a separate cafeteria fund, and all payments from said fund shall be made upon a special order drawn by the *school employe* authorized to purchase food supplies. Said employe shall present each month to the board of directors, for approval, a statement of receipts and expenditures.

"The accounts shall be subject to examination by the auditors of the school district in like manner as other accounts of the school district. Any balance of funds accruing from the operation of the cafeteria must be used only for the improvement or maintenance of the cafeteria and may not be used for other purposes." (Emphasis supplied.)

Section 504 confers no power whatsoever upon boards of school directors to contract with food service management companies or otherwise to

operate school food services through any agent other than school employes.

Section 1337 provides, in relevant part, as follows:

"(a) Definitions. For the purpose of this section — School food program means a program under which food is served by any school on a nonprofit basis to children in attendance, including any such program under which a school receives assistance out of funds appropriated by the Congress of the United States.

"(b) Expenditure of Federal Funds. The Department of Education is hereby authorized to accept and direct the disbursement of funds appropriated by any act of Congress, and apportioned to the State, for use in connection with school food programs. The Department of Education shall deposit all such funds received from the Federal Government in a special account with the Treasurer of the State who shall make disbursements therefrom upon the direction of the Department of Education.

"(c) Administration of Program. *The Department of Education may enter into such agreements* with any agency of the Federal Government, with any board of school directors, or with any other agency or person *prescribe such regulations,* employ such personnel, *and take such other action as it may deem necessary to provide for the establishment, maintenance, operation and expansion of any school food program, and to direct the disbursement of Federal and State funds in accordance with any applicable provisions of Federal or State law.* The Department of Education may give technical advice and assistance to any board of school directors in

connection with the establishment and operation of any school food program, and may assist in training personnel engaged in the operation of such program. The Department of Education, and any board of school directors, may accept any gift for use in connection with any school food program.

"(d) Boards of School Directors. *Pursuant to any power of boards of school directors to operate or provide for the operation of school food programs in schools under their jurisdiction, boards of school directors may use therefor funds disbursed to them under the provisions of this section, gifts and other funds, received from sale of school food under such programs.*" (Emphasis supplied.)

Section 1337 confers no additional powers on boards of school directors other than the power to use funds disbursed to them under that section for school food program purposes. Section 1337 does, however, confer broad powers on the Pennsylvania Department of Education to enter into agreements, prescribe regulations, and take such other action as the Department deems necessary "to provide for the establishment, maintenance, operation and expansion of any school food program and to direct the disbursement of Federal and State funds in accordance with any applicable provisions of Federal or State law." Section 1337 thus implements the national school lunch program which, as we have seen, includes a Federal grant of authority for school districts participating in the program to employ food service management companies.

Accordingly, it is our conclusion that, subject to conditions and limitations imposed by Federal and

State law, and subject to such other conditions and limitations as the Department of Education may, by regulation and/or agreement, impose,[2] a Pennsylvania school district participating in the national school lunch program may, in accordance with section 210.8(d) of the USDA school lunch regulations, employ a food service management company in its feeding operations.

## II. CONDITIONS AND LIMITATIONS

The conditions and limitations currently imposed by Federal and State law are (1) those specified in section 210.8(d) of the USDA school lunch regulations, (2) those inherent in the nonprofit requirements of the National School Lunch Act, and (3) those imposed by provisions of the Public School Code.

The conditions and limitations inherent in the nonprofit requirement of the School Lunch Act are basically those set forth in the 1956 USDA General Counsel's opinion. See section I, supra. The school district must control the prices charged for meals and must be responsible for all costs of, and entitled to all receipts from, the program. A contract permitting the food service management company to operate the program on a straight profit or loss basis, where the company incurs all costs of furnishing meals and receives all income from sales plus Federal and State reimbursements, is clearly prohibited.

The contract between the school district and the

2. A USDA regulation, 7 C. F. R. §210.19(c), specifically provides that "[n]othing contained in this part [Part 210-National School Lunch Program] shall prevent a State agency from imposing additional requirements for participation in the Program which are not inconsistent with the provisions of this part."

food service management company must provide, in effect, that the company shall receive, as profit, *only* a reasonable fixed management fee, and as cost reimbursement, *only* the amount actually expended by the company in the payment of salaries and the purchase of food supplies and other items necessary for the preparation of meals. The contract must not permit the company to manipulate costs for the purpose of increasing its profit over and above the fixed fee. All savings derived as a result of prompt payment, local billing, and national trade discounts, advertising allowances, intra-company procurements, and other cost reduction mechanisms must accrue to the program and not to the company.

If, in any fiscal year, the program's receipts from sales and government subsidies exceeds the program's expenditures, whether or not the school district employs a food service management company, the resulting net income must remain in the program and be used either to offset future operating costs, to improve services, or to reduce the cost of lunches to the children.

Finally, a school district seeking to employ a food service management company must determine, in advance of the initial contract and of each contract renewal, that operation under contract as compared with self-operation will result in total program cost reduction without increased meal prices and without sacrifice in quality of service.

Although the foregoing conditions and limitations are not specifically set forth in USDA regulations, it is clear from various informal USDA communications supplied to us that the USDA applies the conditions and limitations set forth in the 1956 USDA General Counsel's opinion in au-

diting the school lunch program in school districts that employ food service management companies. Furthermore, section 1337 of the Public School Code, 24 P.S. §13-1337, authorizing Pennsylvania's participation in the national school lunch program, also requires that school food programs be nonprofit. Therefore, conditions and limitations of the sort prescribed in the USDA General Counsel's Opinion are applicable, as a matter of State law, to Pennsylvania school districts employing food service management companies.

Additional limitations on the employment of food service management companies by Pennsylvania school districts participating in the national school lunch program are imposed by section 504 of the Public School Code, 24 P.S. §5-504.

As previously observed, section 504, conferring upon boards of school directors the power to operate school cafeterias, confers no power whatsoever upon school boards to contract with management companies or otherwise to operate school food services through any agent other than school employes. While a Federal regulation authorizes school districts participating in the national school lunch program to employ food service management companies to manage school lunch programs, that regulation is silent with respect to the status of personnel employed in the preparation and service of school lunches. May personnel employed to perform the nonmanagement functions of preparing and serving school lunches be management company employes, or does section 504 require that personnel employed to perform nonmanagement functions be school employes despite the employment of a management company to perform management functions? This is a difficult

question, the answer to which depends, in our view, on *where* the lunches are prepared.

Section 504 of the School Code applies *only* to school cafeterias, and clearly, lunches provided under the national school lunch program need not be prepared in school cafeterias. Where the lunches are prepared on management company premises and then delivered to the school for distribution, as may occur, for example, with respect to schools having no facilities for food preparation, the personnel employed in the preparation and delivery of those lunches may be, and inevitably would be, management company employes. Where, on the other hand, the lunches are prepared and served in school cafeterias, albeit under management company supervision, section 504 requires, in the absence of Federal law to the contrary, that personnel employed in the preparation and service of those lunches be school employes. In fact, several Pennsylvania school districts already operate school lunch programs in accordance with the latter arrangement. They employ management companies to perform management functions while retaining as school employes the personnel employed to perform the nonmanagement functions of preparing and serving school lunches.

Section 504 of the School Code imposes a further limitation on the employment of food service management companies applicable to Pennsylvania school districts that participate in the national school lunch program, but also operate school cafeterias in which food having no relation to the school lunch program is prepared and sold to pupils, teachers, and other school employes. By "food having no relation to the school lunch pro-

gram," we mean food for which there is no Federal or State reimbursement; we do not mean food which is provided pursuant to other Federally-assisted school food programs.

The Federal regulation that authorizes a school district participating in the national school lunch program to contract with a food service management company for the operation of *the school lunch program* cannot, and does not, authorize a participating Pennsylvania school district to contract with a management company for the service of *food unrelated to the school lunch program*. With respect to food service having no relation to the school lunch program, section 504 clearly requires that school cafeterias be operated by school employes. Thus, a Pennsylvania school district employing a management company to operate the school lunch program, but continuing to provide unrelated food service, must maintain a complement of school employes to operate that service including at least one employe responsible for purchasing, accounting, and coordinating operation of the unrelated food service with the management company's operation of the school lunch program.

We have, in this opinion, confined our discussion to the employment of food service management companies in the national school lunch program. We should, however, point out that the conclusions provided in this opinion with respect to the school lunch program are also applicable to the employment of food service management companies in the national school breakfast program. The Child Nutrition Act of 1966 requires that school breakfast programs receiving assistance under the act be nonprofit (42 U. S. C. A. §1773(a)), and a USDA

school breakfast regulation (7 C. F. R. §220.7(d)), in language substantially identical to that of section 210.8(d) of the USDA school lunch regulations, authorizes school districts participating in the school breakfast program to employ food service management companies. Section 1337 of the Public School Code, 24 P.S. §13-1337, implements the school breakfast program. Accordingly, subject to the foregoing conditions and limitations, a Pennsylvania school district participating in the national school breakfast program may lawfully employ a food service management company in its feeding operations.

In conclusion, we are fully aware that the complexity of this matter may give rise to difficulties in the implementation of this opinion. We, therefore, stand ready to assist the Department of Education should the Department find itself in need of further guidance.